| | |
|---|---|
| BJS INSURANCE, LLC ) | IN THE |
| 2005 Burdock Road ) | |
| Elkridge, Maryland 21075 ) | CIRCUIT COURT |
| ) | |
| Plaintiff, ) | FOR |
| ) | |
| v. ) | BALTIMORE COUNTY |
| ) | |
| TOKIO MARINE HCC ) | |
| PROFESSIONAL LINES GROUP CLAIMS ) | Case No. C-03-CV-24-000360 |
| 37 Radio Circle Drive ) | |
| Mount Kisco, NY 10549 ) | |
| SERVE: ) | |
|    Insurance Commissioner ) | |
|    Kathleen A. Birrane ) | |
|    Maryland Insurance Administration ) | |
|    200 St. Paul Place ) | |
|    Suite 2700 ) | |
|    Baltimore, MD 21202 ) | |
| ) | |
| and ) | |
| ) | |
| HOUSTON CASUALTY COMPANY ) | |
| 37 Radio Circle Drive ) | |
| Mount Kisco, NY 10549 ) | |
| SERVE: ) | |
|    Insurance Commissioner ) | |
|    Kathleen A. Birrane ) | |
|    Maryland Insurance Administration ) | |
|    200 St. Paul Place ) | |
|    Suite 2700 ) | |
|    Baltimore, MD 21202 ) | |
| ) | |
| Defendants. ) | |
| ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff BJS Insurance LLC (the "Insured," "Plaintiff," or "BJS"), by and through its undersigned counsel, C. Thomas Brown, Esq., seeks entry of judgment against The Tokio Marine HCC ("Tokio") and against Houston Casualty Company ("Houston") (together Houston and Tokio shall be referred to as "Insurer," "Defendant") on the grounds set forth herein:

**PARTIES AND JURISDICTION AND VENUE**

1. Plaintiff BJS Insurance LLC is a Maryland limited liability company whose members are citizens of the State of Maryland.

2. Defendant Tokio Marine HCC is an international specialty insurance group. On information and belief, Tokio has offices across the United States, the United Kingdom, Spain, and Ireland.

3. Defendant Houston Casualty Company is reported by SDAT to be a foreign company with its principal place of business in Texas.

4. Neither Tokio Marine HCC nor Houston Casualty Company are a true blue corporation, and as such they are treated for diversity of citizenship purposes as unincorporated associations, which take on the citizenship of their members.

5. Plaintiff BJS is a member of the Defendants and therefore the Defendants take on BJS's Maryland Citizenship.

6. There is no diversity of citizenship between the Plaintiff and the Defendants.

7. This Court has subject matter jurisdiction over this case pursuant to Md. Code Ann., Cts. & Jud. Proc. § 1-501 because BJS, the Insured under the insurance policy issued by Defendants, is located in, and the policy was delivered in, Baltimore County, Maryland.

8. This Court has personal jurisdiction over the Defendants pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103 because Defendants conduct business in the State of Maryland and because the cause of action herein arises out of conduct in the State of Maryland.

9. Venue is proper in Baltimore County because the policy was issued in this County and because the denial of BJS's claim was made by letter sent to BJS in Baltimore County.

**BJS's Business**

10. BJS's business involved the soliciting, placing, and selling of insurance policies where the insurance premiums were sometimes paid by premium finance agreements.

11. BJS had a verbal agreement with an individual named Rich Covelli to split commissions earned from the purchase, sale and/or financing of the insurance policies.

12. The verbal arrangement with Mr. Covelli was that he and BJS, as licensed insurance agents, were to split commissions earned upon the sale of policies, which arrangement was evidenced by the fact that there were payments made from Mr. Covelli (or his business entities, including JTR, LLC and JTR1, LLC) to or on behalf of BJS as its share of the commissions.

13. To protect itself, BJS sought a liability insurance policy to cover the risks associated with its business and expressly explained the business to the Defendants' agent, who confirmed that the Defendants would insure the Plaintiff against the risks inherent in the business in which Plaintiff was engaged.

14. The Defendants' agents were informed that BJS sought insurance to cover it from suit and claims brought against it based upon its business model.

15. The Defendants confirmed that coverage would be available for any such suits and a defense would be supplied.

**The Liability Policy issued by Defendants**

16. This action involves a claim under a liability insurance policy issued by the Defendants to BJS, a copy of which is attached hereto as Ex. 1.

17. The policy had an Effective date from 1-13-2022 through 1-13-2023, with a retroactive date back to 1-13-2012.

18. The policy issued by the Defendants to BJS Insurance, LLC made the following coverage promise under the Professional Services Liability Coverage, among others:

> *The Company shall pay Loss and Claim Expenses, in excess of the Deductible and subject always to this Policy's Limit of Liability, that an Insured shall become legally obligated to pay as a result of a Claim made against an Insured for a Wrongful Act arising from Professional Services ….*

19. As to the duty to defend, the Insurer agreed as follows:

> *(8)   Defense*
> *The Company shall have the right and duty to defend any Claim to which this Policy applies, even if the allegations are groundless or false. The Company has the sole right to select and appoint legal counsel to represent any Insured with respect to any Claim to which this Policy applies….*

20. Under the policy a Claim is:

> *"Claim" shall mean:*
>
> *(8)   a written demand made against any Insured for monetary damages or non- monetary relief, or*
>
> *(2)   any civil, arbitration or administrative proceeding commenced by the service of a complaint or similar pleading and initiated against any Insured; including any appeal thereof.*

21. The lawsuit by the Trustee is a Claim under the Policy in which the Plaintiff was exposed to liability as a result of a Claim made against the Plaintiff, an Insured under the Policy, for a Wrongful Act arising from Professional Services.

22. Here a "claim", as defined by the Policy, has been made against the Plaintiff as a named insured.  Under the Policy an insured shall mean "The Named Insured" as well as the following:

> *(2) any natural person who is a current, former or future partner, principal, officer, Manager, director, member or employee of any Insured with*
>     *respect to a Wrongful Act committed only while acting within the scope of his or her duties on behalf of any Insured;*

4

*(3) any natural person who is contract, temporary or leased personnel rendering Professional Services, but only with respect to a Wrongful Act committed while acting under the direct supervision of and on behalf of any Insured;*

*(4) the lawful spouse or Domestic Partner of an Insured (as set forth in paragraphs (2) or (3) above) for any Claim made against such spouse or Domestic Partner solely by reason of his/her status as a spouse or Domestic Partner of an Insured or his/her ownership interest in marital property/assets that are sought as recovery for such Claim, but only if the Claim does not allege any Wrongful Act by such spouse or Domestic Partner;*

*(5) the estate, heirs, assigns or legal representatives of any Insured (as set forth in paragraphs (2) or (3) above) in the event of such Insured's death, incapacity or insolvency, for any Claim made against the estate, heirs, assigns or legal representatives of such Insured solely by reason of his/her/its status as the estate, heirs, assigns or legal representatives of such Insured and only to the extent that coverage would have otherwise been provided under this Policy to such Insured;*

*(6) Subsidiary;*

*(7) Predecessor Firm; and*

*(8) an Independent Contractor.*

23. Here, since the Trustee's Suit is against the named insured, there is no question that the Claim relates to the Named Insured under the policy.  A true and accurate copy of the complaint is attached hereto as Ex. 2.

24. The Policy contains the following definition of Professional Services:

*"Professional Services" shall mean only the following activities undertaken by a licensed insurance agent, insurance broker, managing general agent, surplus lines broker, wholesale insurance broker, underwriting manager, managing general underwriter, claims adjuster, and/or program administrator:*

*(1) the soliciting, placing, selling or servicing of any of the following:*

  *(a) property and casualty insurance;*

  *(b) life insurance, accident and health insurance, workers*

5

*compensation insurance as part of a 24-hour accident and health
insurance product, long-term care insurance, disability income
insurance, or fixed annuities;*

*(c) variable products, including, but not limited to, variable annuities,
flexible and scheduled premium annuities, and variable life insurance, but only as a
licensed registered representative to
provide such products; or*

*(d) employee benefit plans, including, but not limited to, Group Plans,
Group or Ordinary Pension or Profit Sharing Plans, 401-(K) or 501
(b) Plans, Retirement Annuities, Life, Accident and Health or
Disability Plans;*

*(2) insurance consulting and expert witness services in connection with
insurance related matters;*

*(3) appraising real or personal property for a client in connection with the
products set forth above;*

*(4) arrangement of premium financing for a client in connection with the
placement of insurance coverage;*

*(5) safety consulting, loss control services, teaching insurance/risk
management courses/seminars, and risk management services for a
client in connection with the products set forth above;*

*(6) tax advice which is an incidental part of the rendering of Professional
Services; and*

*(7) services as a notary public in connection with soliciting, placing, selling or
servicing of insurance coverage.*

25.     Here the Claim made by the Trustee against the Plaintiff relates to the "*the soliciting, placing, selling or servicing" related to the "arrangement of premium financing for a client in connection with the placement of insurance coverage."* Accordingly the Claim against the Insured potentially relates to the provision of *"professional services."*

26.     The policy contains the following definition of Wrongful Act:

*"Wrongful Act" shall mean:*

> *(1) any actual or alleged negligent act, error or omission committed or allegedly committed by any Insured solely in connection with the rendering of Professional Services; or*
>
> *(2) Personal Injury actually or allegedly caused by an Insured solely in connection with the rendering of Professional Services.*

27. Here the Defendants denied BJS's claim, primarily asserting that the Trustee's Suit contains no alleged "wrongful act".

28. The Defendants' analysis was wrong as was their denial, as the Defendants owe BJS a duty to defend if there is any potential that a claim is covered under the Policy.

29. Here the suit by the Trustee clearly asserted claims that had the potential to be covered under the policy since allegations made by the Trustee could be said to involve any "actual or alleged negligent act, error or omission" in connection with the rendering of professional service.

30. The Defendants' denial of a defense was clearly erroneous since the Trustee's Suit is broad enough to cover a potential claim of an alleged Wrongful Act.

31. Since considering the Trustee's Suit, the duty to defend is triggered since "any potentiality of coverage, no matter how slight, gives rise to a duty to defend." Litz v. State Farm Fire & Cas. Co., 346 Md. 217, 226, 695 A.2d 566, 567 (1997)

32. Since the duty to defend is triggered by a "potential" claim, and since the Trustee's Complaint is broad enough to cover a claim within the scope of coverage, the Defendants breached their policy when they failed to provide a defense and when they failed to indemnify BJS.

**The Underlying Suit and Claim against BJS**

33. BJS was named as a defendant in a suit filed on February 4, 2022, by A. Burton Shuford (the "Trustee") as the Trustee for the Bankruptcy Estate of JTR1, LLC, a Delaware

7

limited liability company, f/d/b/a JTR, LLC.  A copy of the complaint is attached hereto as Ex. 2 (hereinafter the "Trustee's Suit").

34. The Defendants have a duty to defend BJS for any claims brought against it that are potentially covered under the insured's policy which would include the Trustees Suit. Thus, a duty to defend may extend even beyond instances in which an insured is liable, and the insurer must indemnify. *Md. Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 688 (2015).

35. Given the breadth of the Trustee's Suit, there was potential for claims against BJS to result in liability covered under the Defendants-issued insurance policy.

### The Wrongful Denial of a Defense and Indemnification

36. A claim was made on the Defendants under the Policy, triggering the Defendants duty to defend BJS, and to indemnify BJS for the Trustee's Suit.

37. The Trustee's Suit includes attempts to recover transfers under 11 USC 544 and 28 USC 3304.

38. The Trustee's Suit included attempts to recover payments made by the Debtor to the DJS for both allegedly fraudulent transfers and for allegedly constructively fraudulent transfers.

39. While a fraudulent transfer is set aside only upon a showing of an "intent to delay, hinder or defraud" creditors, a constructively fraudulent transfer is typically a transfer made without adequate consideration and which renders the transferor insolvent or unable to pay remaining debts.

40. Fraud and fraudulent intent are not elements of a claim advance for constructive fraud.

41. A constructively fraudulent transfer covers the potential for a transfer in which BJS was negligent in determining whether consideration was adequate, and/or was negligent in not knowing that the transfer would render the transferor insolvent or unable to pay remaining debts.

42. The Trustee's Suit contains 5 counts.

43. Counts IV and V (pled in the alternative to the other counts) include claims for relief based at least in part upon alleged constructive frauds, which may be triggered by negligence, and which would constitute a wrongful act as defined by the Policy.

44. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud." Ellerin v. Fairfax Sav., F.S.B., 337 Md. 216, 236 n.11 (1995) (citation omitted); Brass Metal Prods. v. E-J Enters., 189 Md. App. 310, 360 (2009).

45. "[N]either actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud." Bontempo v. Lare, 217 Md. App. 81 (2014) (citing *Scheve v. McPherson*, 44 Md. App. 398 (1979)). Best v. Greater Suburban Md. Provisional Chptr, No. 1151, 2020 Md. App. LEXIS 98, at *6 (Feb. 3, 2020).

46. The Trustee's Suit is broad enough to cover Constructive Fraud as a "Wrongful Act" under the Policy.

47. The Defendants were given multiple opportunities to provide a defense and participate in the defense.

48. On July 31, 2023, the Defendants were given the opportunity to provide a defense and participate in the defense. See Ex. 4 hereto.

49. On August 14, 2023, the Defendants were given another opportunity to provide a defense and participate in the defense. See Ex. 5 hereto.

9

50. The Defendants were put on notice that settlement of the Trustee's Suit was being undertaken, with a request for the Defendants to provide a defense and participate. See Ex. 5 hereto.

51. Despite this offer the Defendants refused to provide a defense and refused to participate in the defense.

52. In October 2023, BJS and the Trustee entered into a settlement agreement, which agreement confirmed that the allegations being made against the Plaintiff included allegations of negligence in the sale, transfer and financing of insurance policies. A true and accurate copy of that agreement is attached as Ex. 3 hereto.

53. The settlement agreement contained the following recitals:

WHEREAS, on February 4, 2022, the Trustee filed a Complaint against the Defendants BJS Insurance and JJM, styled A. Burton Shuford, Trustee of the Bankruptcy Estate of JTRJ, LLC f/d/b/a JTR, LLC vs. BJS Insurance, LLC and JJM, LLC Adv. Pro. No.22-03018, to avoid transfers made to or for the benefit of Defendants, **including transfers negligently made to or for the benefit of Defendants while the Debtor was insolvent**, and seeking to recover the value of the transfers, for interest, and for costs and expenses incurred (the "BJS Adversary Proceeding"); and

WHEREAS, on February 4, 2022, the Trustee filed a Complaint against the Defendant TMC, styled A. Burton Shuford, Trustee of the Bankruptcy Estate of JTRJ, LLC f/d/b/a JTR, LLC vs. TMC Financial, LLC Adv. Pro. No. 22-03017, to avoid transfers made to or for the benefit of Defendant, **including transfers negligently made to or for the benefit of Defendant while the Debtor was insolvent,** and seeking to recover the value of the transfers, for interest, and for costs and expenses incurred (the "TMC Adversary Proceeding"); and

WHEREAS, on February 4, 2022, the Trustee filed a Complaint against the Defendant JMC, styled A. Burton Shuford, Trustee of the Bankruptcy Estate of JTRJ, LLC f/d/b/a JTR, LLC *vs.* JMC Financial Holdings, LLC Adv. Pro. No. 22-03007, to avoid transfers made to or for the benefit of Defendant, including **transfers negligently made to or for the benefit of Defendant while the Debtor was insolvent,** and seeking to recover the value of the transfers, for interest, and for costs and expenses incurred (the "JMC Adversary Proceeding" and together with the BJS Adversary Proceeding and the TMC Adversary Proceeding, the "Adversary Proceedings")

See Ex. 3 (emphasis supplied).

54. The settlement agreement in paragraph 5 contained an express release of BJS, "*including but not limited to claims for negligent transfers, transfers made at a time when Defendants negligently believed the Debtor to be solvent, or transfers for what Defendants negligently believed was reasonably equivalent value but was in fact for less than reasonably equivalent value, from the beginning of time to the date of this Agreement, relating to or arising from the Adversary Proceedings. For the avoidance of doubt, this release is intended to include as beneficiaries JTB Advisors, LLC, JTB Marketing, LLC, JTB Risk Services, LLC, Old Colony Associates, LLC, Thomas M. Covelli, Jeffrey M. Covelli, and Barry J. Steinfelder.*"

55. BJS paid $200,000 in settlement of the Trustee's Suit, which included claims for negligence, and the Defendants have an obligation to indemnify BJS for this settlement amount.

56. BJS expended hundreds of thousands of dollars in defending the claim before the settlement was reached.

57. The Settlement Agreement was noticed to the various creditors and others, and after a hearing an Order of the Bankruptcy Court approving the settlement was entered and has now become final. A true and accurate copy of the Order approving the settlement is attached as Ex. 3.1.

58. The Defendants could have, but chose not to, participate in the settlement negotiations.

**The Defendants' Wrongful Denial of a Defense and Indemnification**

59. Houston Casualty Company delegated the handling of BJS's claim to Tokio Marine HCC – Cyber & Professional Lines Group Claims Department.

60. On April 11, 2022 the Defendant denied BJS's claim for a defense and indemnification, and refused to provide BJS a defense of the Trustee's Suit and further denied any obligation to indemnify BJS for any liability established in, or settlement of the Trustee's Suit.

61. On July 31, 2023, and on August 14, 2023, the Defendants were given the opportunity to provide a defense and participate in the defense. See Ex. 4 and 5 hereto.

62. The Defendants' denial was wrongful and a breach of its obligation to BJS.

63. At all times relevant hereto the premium had been paid and all conditions precedent to coverage and this suit have either been met or the Defendant is estopped or has waived the same.

64. BJS has satisfied all conditions precedent to the filing of this action and to payment of the Claim and have met all of their obligations due under the Policy. Alternatively, the Defendants have waived all conditions necessary to the filing of this suit or is estopped to rely thereon.

## COUNT I
### *(Breach of Contract Against the Defendants for Duty to Defend)*

65. Paragraphs 1-64 are incorporated herein.

66. At all times relevant hereto, while the policy has been in effect the premiums have been paid.

67. Since there was a potential that BJS would be held liable to the Trustee for claims covered by the Defendants' liability policy, the Defendants had an obligation to provide BJS a defense.

68.   The Defendants breached their duties to BJS when they wrongfully failed to provide a defense and BJS had to provide its own defense at a cost of hundreds of thousands of dollars.

69.   As a direct result of the Defendant's breach of contract, BJS has been damaged in an amount in excess of $75,000.

## COUNT II
*(Breach of Contract Against the Defendants for Duty to Indemnify)*

70.   Paragraphs 1-69 are incorporated herein.

71.   At all times relevant hereto, while the policy has been in effect the premiums have been paid.

72.   Since there was a potential that BJS would be held liable to the Trustee for claims covered by the Defendants' liability policy, the Defendants had an obligation to provide BJS a defense.

73.   The Trustee's Suit was settled with a settlement agreement that expressly released negligent claims.

74.   BJS has had to fund that settlement in the amount of $200,000.

75.   The Defendants breached their duties to the Plaintiff when they wrongfully failed to indemnify the Plaintiff for their payment of the settlement amount.

76.   As a direct result of the Defendant's breach of contract, the Plaintiffs have been damaged.

WHEREFORE, Plaintiff BJS Insurance, LLC seeks entry of judgment against Tokio Marine HCC and Houston Casualty Company, jointly and severally, and requests judgment and prays for relief as follows:

    i.    Award damages in an amount deemed by the trier of fact to compensate BJS for the Defendants' breach of the duty to defend BJS from the Trustee's Suit; and

    ii.    Award damages in an amount deemed by the trier of fact to compensate BJS for the Defendants' breach of the duty to indemnify BJS from the amount paid to settle the Trustee's Suit; and

    iii.    Award Pre-and post-judgment interest; and

    iv.    Award BJS Insurance, LLC of attorney's fees, costs and fees incurred in seeking coverage from Defendants and in prosecuting this suit; plus make and provide; and

    v.    Any other relief the Court deems proper in this case.

**A TRIAL BY JURY IS DEMANDED**

BJS INSURANCE, LLC
By Counsel

*/s/ C. Thomas Brown*
C. Thomas Brown, Esquire (AIS# 0712110469)
Erik B. Lawson, Esquire (AIS# 2001220058)
SILVER & BROWN, P.C.
10621 Jones Street, Suite 101
Fairfax, Virginia 22030
tom@virgnia-lawyers.net
erik@virginia-lawyers.net
(703) 591-6666
(703) 591-5618 – Facsimile
*Attorneys for Plaintiff*

## **CERTIFICATION PURSUANT TO RULE 1-313**

C. Thomas Brown, Esquire along with Erik B. Lawson, Esquire certify that they are admitted to practice before the Maryland Courts.

*/s/ C. Thomas Brown*
C. Thomas Brown, Esquire (AIS# 0712110469)

---

## **CERTIFICATE OF COMPLIANCE**

I CERTIFY that the attached submission does not contain any restricted information or, if it does contain restricted information, a redacted submission has been filed contemporaneously pursuant to Rule 20-201(h).

*/s/ C. Thomas Brown*
C. Thomas Brown, Esquire (AIS# 0712110469)